DILLENBERG, Special Administratrix, Appellant, vs.
CARROLL and another, Respondents.

*September 10—October 9, 1951.*

For the appellant there were briefs by *Eberlein & Eberlein* of Shawano, and oral argument by *Frederic C. Eberlein.*

For the respondents there was a brief by *Everson, Ryan, Whitney & O'Melia* of Green Bay, and oral argument by *John C. Whitney.*

FRITZ, C. J.  The injuries to Clarence Dillenberg for which recovery is sought in this action were sustained at 2:30 p. m., on November 19, 1948, while he was riding in an automobile operated by the defendant Patrick Carroll on a highway extending north and south.  Along the place of the accident there was a black-top surface on the highway twenty-two to twenty-four feet wide, with the east shoulder of the roadway approximately four to five feet wide and rough and grassy; and an underground type of culvert which at its east edge had wings going to the northeast and southeast.

Two feet east of the black-top, and south of the culvert, there was a warning post thirty inches high painted black and white which was knocked down, but the testimony was not definite as to whether that occurred before or after the accident.  About sixteen feet north of the culvert and twenty feet east of the black-top, there was a telephone pole, which

was broken by Carroll's car. There was a hill approximately twenty-five hundred feet south of the culvert, and also a hill north of the culvert. It was raining some, and the road was wet, and Carroll had his windshield wiper operating. He testified on the trial the road was not icy at the time of the accident; but in a written statement secured by an agent of the defendant insurance company, Carroll had stated the road had iced up some as he went farther north.

Clarence Dillenberg died eight months after the accident, and before the trial of this action. In the meantime the defendant insurer had secured from the deceased a written statement.

On the trial the only witnesses who testified as to the accident were the defendant Carroll and Raymond Hogan, a county traffic officer, who went to the scene of the accident thirty to forty-five minutes after it happened. He then made certain observations and measurements which he made into a written report, but he lost the report and on the trial testified from memory.

Carroll testified as he came over a hill to the south of the culvert he could see two cars coming south over the hill to the north when he was four hundred to five hundred feet away from those two cars. He did not know if he reduced his speed when he saw those cars. At the time he was driving between thirty and forty miles per hour on the east half of the highway. When those cars were two hundred to two hundred fifty feet away from him, one started to pass the other. He does not know if he put on his brakes when he saw those cars trying to pass; and he did not turn to the right or east until he was one hundred feet away from them. The two cars passed him south of the culvert, but he did not know how far south of the culvert they passed him, nor did he know whether the two cars were side by side at the time they passed him. After they passed, Carroll continued going on

the soft shoulder. He then turned to the right, but did not see the culvert or the post and went into the ditch. He did not know where the accident happened because he was knocked out. He had never driven that highway before.

He did not recall whether he applied his brakes before or after the accident, and did not know how far he traveled on the shoulder up to the culvert, nor how far he traveled on the shoulder before he went into the ditch. He said he was quite sure he took his foot off the accelerator when he saw those cars starting to pass but did not know whether he applied his brakes. He testified he did not do anything else he could remember. He stated the accident took place soon thereafter, right at the culvert.

In a written statement dated December 8, 1949, Carroll stated that he first observed the two cars passing each other when they were four hundred to five hundred feet away and he was going about twenty-five to thirty-five miles per hour and continued going in his normal path of travel toward those two cars until he was eighty-five feet away, when he then pulled his car to the right shoulder; that he did not apply his brakes but might have after he went onto the shoulder. But on the trial of the action he testified the cars were two hundred to two hundred fifty feet away when they started to pass each other, and that he continued in his normal path of travel until he was one hundred feet away.

In a special verdict the jury found that at the time Carroll ran into the ditch he was not negligent in respect to, (a) keeping a proper lookout; (b) proper management and control of his automobile. On that verdict judgment was entered dismissing the complaint.

(I) (a) Under the evidence on the trial there were issues for the jury as to whether Carroll:
- (1) Failed to keep a proper lookout, and
- (2) Failed in properly managing and controlling his automobile.

(b) And also whether Carroll's failure in those respects constituted such causal negligence as to render him liable for the injury of Clarence Dillenberg.

(II) And the evidence on the trial admitted of findings to that effect.

However, during the trial, plaintiff offered in evidence in its entirety, and later also parts of, plaintiff's Exhibits 2 and 2B, which is a signed statement by Clarence Dillenberg that was obtained on behalf of the defendants by Walter H. Reinholdt employed by the defendant, Fidelity & Casualty Company. When plaintiff's attorney first offered the entire statement in evidence the defendants objected thereto and the court sustained the objection. Thereupon plaintiff's attorney offered that part which reads: "Previous to the accident Patrick Carroll was driving about forty miles per hour or slower. He was driving in a southerly direction. There were two cars moving south ahead of us." Plaintiff's attorney stated: "I would like to offer that part by itself upon the grounds that it is an admission against interest made to an agent of the defendant." Defendant's attorney stated: "I have no objection to the reception of the first two sentences. I do not believe that the last sentence 'There were two cars moving south ahead of us' consists of an admission against interest and object to its reception. I do not object to that part that says he was driving forty miles per hour or slower." The court stated: "Objection sustained. The balance of the quoted part of the exhibit may be read to the jury when they return." Plaintiff's attorney stated: "I would also like to offer the following from Exhibit 2B: 'Just before the accident Patrick Carroll said, "By gosh, it's getting slippery," and he put his foot on the brake and the car went into a skid on the highway and the car shot to the right ditch, went over some rocks, and I am told I and Carroll were thrown out of the car.'" Defendant's attorney stated: "I must object to this as not constituting an admission against interest." The court stated: "Objection sustained."

The court erred in sustaining the above-stated objections made by defendants. Upon plaintiff's attorney offering and the court admitting in evidence that part of Dillenberg's statement which reads: "Previous to the accident Patrick Carroll was driving about forty miles per hour or slower. He was driving in a southerly direction," as an admission against interest made to an agent of the defendant, the matters then stated by Dillenberg to defendant's agent, Reinholdt, including the statement: "Just before the accident Patrick Carroll said, 'By gosh, it's getting slippery,' and he put his foot on the brake and the car went into a skid on the highway and the car shot to the right ditch, went over some rocks, and I am told I and Carroll were thrown out of the car," became admissible in evidence.

As stated in 20 Am. Jur., Evidence, p. 467, sec. 556:

"An important exception to the hearsay rule is that which pertains to declarations against interest. The general rule is that a declaration against the interest of the person making it is admissible in evidence, notwithstanding its hearsay character, if the declaration is relevant and the declarant has died, become insane, or for some other reason is not available as a witness. . . . The theory under which declarations against interest are received in evidence notwithstanding they are hearsay is that the necessity of the occasion renders the reception of such evidence advisable and, further, that the reliability of such declarations is generally to be depended upon since a person does not ordinarily assert facts which are against his own pecuniary interest. A declaration against interest is admissible notwithstanding the declarant is neither a party nor in privity with a party to the action. It is admissible as an entirety including parts not against interest, if the latter are substantially connected with the same subject matter as that covered by the part against interest."

In *Smith v. Moore*, 142 N. C. 277, 55 S. E. 275, 7 L. R. A. (N. S.) 684, the court said at page 286:

"The declaration is admissible as an entirety, including statements therein which were not in themselves against

interest, but which are integral or substantial parts of the declaration, the reason why this is so being that the portion which is trustworthy, because against interest, imparts credit to the whole declaration." See also *Truelsch v. Miller,* 186 Wis. 239, 246, 202 N. W. 352.

In instructing the jury as to what constitutes such negligence as to render Carroll liable for damages to the plaintiff in this action, the court stated:

"Negligence is sometimes also defined as a failure to use that degree of care and caution which is ordinarily used by the *majority of persons* acting under the same or similar circumstances. The *majority of persons* usually so act and take such precautions in operating and in riding in automobiles that, under the circumstances present at the time, they create no reasonable cause for foreseeing that damage or injury might probably result from their conduct."

Plaintiff claims that the instruction in effect stated much too low the standard of care which had to be exercised by the defendant. It has long been the rule in Wisconsin that ordinary care is such care as the *great mass of mankind ordinarily exercise,* and as applied to any particular case it is such care as the great mass of mankind ordinarily exercise under the same or similar circumstances.

For some years, this court without approval permitted a definition of negligence which stated: "The care which the *great majority* of men ordinarily exercise." But under the trial court's instruction in the case at bar, a mere majority would be considered to set the standard.

After an extended and careful review of the decisions of this court, the following was used in *Osborne v. Montgomery,* 203 Wis. 223, 233, 234 N. W. 372:

"From a multitude of cases and a long consideration of this entire field, courts have arrived at the conclusion that in the absence of a standard declared by statute or previous

decision, before liability can be predicated upon the acts of the defendant it must appear that he has failed to exercise that degree of care which the *great mass of mankind* exercise under the same or similar circumstances, which is usually designated 'ordinary care.' While this standard lacks definiteness, if it be conceded that some standard must be applied, no better standard is suggested and we find none. It is considered that instructions intending to lay down the rules of law which should guide the jury in determining the ultimate facts in the case, should somewhere, in some way, *include a reference to this generally accepted standard.* No form of statement is sacrosanct. It is the idea that is essential."

And the rule as to the standard of such care as is ordinarily exercised by the great mass of mankind under like circumstances has continued to be considered applicable. *Reuling v. Chicago, St. P., M. & O. R. Co.* 257 Wis. 485, 492, 44 N. W. (2d) 253.

*By the Court.*—Judgment reversed and cause remanded for a new trial.