MERLINO, Plaintiff and Respondent, v. MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Defendant: MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Defendant and Appellant.

*March 31—April 28, 1964.*

574

For the appellant there were briefs by *Kivett & Kasdorf*, attorneys, and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis*.

For the respondent there was a brief by *Usow & Starobin* of Milwaukee, and oral argument by *Sidney Usow*.

CURRIE, C. J.   The following issues are presented by the instant appeal and cross appeal:

(1) Is there credible evidence to support the finding of causal negligence against the bus driver?

(2) If the preceding question is answered in the affirmative, was there a superseding cause which intervened to cause the collision that would relieve appellant from liability?

(3) Did the trial court commit prejudicial error in refusing to admit into evidence written statements subscribed by two of appellant's witnesses?

(4) Did the trial court commit prejudicial error in instructing the jury?

(5) Did the trial court commit prejudicial error in failing to submit a separate question in the special verdict as to whether an emergency existed with respect to the errand of the ambulance at time of accident?

(6) Did the trial court abuse its discretion in finding excessive the jury's award of $16,000 for impairment of plaintiff's earning capacity?

*Causal Negligence of Bus Driver.*

Sec. 346.19 (1), Stats., provides that:

"Upon the approach of any authorized emergency vehicle giving audible signal by siren the operator of a vehicle shall

yield the right of way and shall immediately drive such vehicle to a position as near as possible and parallel to the right curb or the right-hand edge of the shoulder of the road-way, clear of any intersection and, unless otherwise directed by a traffic officer, shall stop and remain standing in such position until the authorized emergency vehicle has passed."

This statute required the bus driver to do two things as soon as he heard the siren of the ambulance to his rear. First, he was to clear the intersection and drive the bus as close to the west curb as possible. Secondly, he was required to then stop the bus. In passing on the questions of whether he complied with this statute, and, if he did not, whether such violation of the statute was causal, we must accept the version of the credible evidence which sustains the verdict. *Rossow v. Lathrop* (1963), 20 Wis. (2d) 658, 663, 123 N. W. (2d) 523.

Because there is a conflict in the testimony as to whether the bus was stopped or moving at time of impact, we must assume that it was still in motion. Furthermore, we must accept the testimony that the right side of the bus was then four feet from the west curb. The jury would have been warranted to infer from the slow speed of the bus that it would have been possible for the driver to have cleared the intersection and pulled over into the parking lane marked "No Parking" and to have stopped next to the curb. There-fore, the jury could rightly conclude that the bus driver failed to comply with sec. 346.19 (1), Stats., in both respects.

Turning to the question of causation, we do not deem as causal the fact that the bus may have been in motion instead of being stopped. We do determine, however, that the failure to have had the bus close to the west curb instead of four feet out in the street was causal. The jury could well conclude that if the bus at time of impact was three feet closer to the curb the accident would not have happened. This is a proper situation in which to apply the "but for" test in determining

whether a particular act of negligence was a substantial factor in causing the accident giving rise to plaintiff's damages. See *Chapnitsky v. McClone* (1963), 20 Wis. (2d) 453, 465, 466, 122 N. W. (2d) 400.

*Superseding Cause.*

Appellant contends that any negligence of the bus driver was superseded as a legal cause of plaintiff's injuries by the intervening act of the driver of the automobile which passed the ambulance and cut in ahead of it thereby causing the ambulance driver to turn right and strike the bus.

We are satisfied that under the instant facts the act of the unidentified motorist was a concurring and not an intervening cause. An intervening force is defined in Restatement, 2 Torts, p. 1185, sec. 441 (1), as follows:

"An intervening force is one which actively operates in producing harm to another *after* the actor's negligent act or omission has been committed." (Emphasis supplied.)

Likewise Prosser, Law of Torts (2d ed.), p. 266, sec. 49, states:

"An intervening cause is one which comes into active operation in producing the result *after* the actor's negligent act or omission has occurred." (Emphasis supplied.)

See also *Foellmi v. Smith* (1961), 15 Wis. (2d) 274, 280, 112 N. W. (2d) 712.

Without an intervening force or act of negligence there can be no superseding cause. Restatement, 2 Torts, pp. 1184, 1185, sec. 440. The rule with respect to concurring cause is stated, Id., p. 1184, sec. 439, thus:

"If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability."

Under the evidence most favorable to sustain the verdict, the bus driver at time of impact was operating the bus four feet from the curb. Therefore, the act of the unidentified motorist in cutting ahead of the ambulance was a concurring and not an intervening act of negligence in relation to the bus driver's negligence.

However, even if the bus had been stopped prior to impact so that the act of the unidentified motorist would be an intervening force, this would not necessarily make it a superseding cause. Whether it was a superseding cause would present a question of law for the trial court to decide after the verdict had been rendered. *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. (2d) 421, 429, 430, 114 N. W. (2d) 823; *Ryan v. Cameron* (1955), 270 Wis. 325, 331, 71 N. W. (2d) 408. In passing on this question of law the court should consider the test laid down in Restatement, 2 Torts, p. 1196, sec. 447.[1] *Dombrowski v. Albrent Freight & Storage Corp.* (1953), 264 Wis. 440, 445, 59 N. W. (2d) 465.

Under the test laid down by the Restatement, the intervening negligent act of the unidentified motorist would not be a superseding cause if the bus driver should have realized that this might occur. A reasonably prudent driver in the bus

---

[1] This section of the Restatement states:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

driver's position should have realized that danger of collision between the ambulance and the bus would likely to be increased as a result of the acts of other motorists if the bus driver did not comply with the statutory requirement of pulling over to the curb and then stopping. The fact that a reasonably prudent driver in his situation would not have anticipated the particular act of negligence indulged in by the unidentified motorist is immaterial. Essentially in order for the intervening act of negligence to constitute a superseding cause it must be such that the conscience of the court would be shocked if the first actor were not relieved from liability. On the record before us our conscience is not shocked by the jury's imposing liability on the Transport Company for the negligence of its bus driver.

### *Admissibility of Witnesses' Statements.*

During the course of the trial appellant Transport Company called as its witnesses, Jerome Kiefert and Violet Krause. Upon cross-examination of these witnesses by opposing counsel it was brought out that they had given the Transport Company written statements about the facts surrounding the accident observed by them. Opposing counsel then asked for production of these statements and they were handed to them by appellant's counsel.[2] These statements were then used by opposing counsel in cross-examining these two witnesses, but no parts of the statements were read into the record. Thereafter, appellant's counsel offered the two statements in evidence, plaintiff's counsel objected, and the trial court sustained the objection and excluded the statements. Appellant contends that this ruling constitutes prejudicial error.

---

[2] Opposing counsel had the right to require the production of such statements for impeachment purposes. *Kurz v. Collins* (1959), 6 Wis. (2d) 538, 549, 95 N. W. (2d) 365. See also *Jacobi v. Podevels,* ante, p. 152, 127 N. W. (2d) 73.

There is a division of authority in this country on the point at issue. 20 Am. Jur., Evidence, p. 775, sec. 920; Anno. 151 A. L. R. 1006. The so-called English rule, which is apparently followed by a majority of American jurisdictions, is that where a document is produced in response to a call therefor by the adverse party, and the adverse party examines it, the party producing it has the right to have it introduced in evidence. *Leonard v. Taylor* (1944), 315 Mass. 580, 53 N. E. (2d) 705, 151 A. L. R. 1002. Wigmore severely criticizes this rule. 7 Wigmore, Evidence (3d ed.), p. 557 *et seq.,* sec. 2125. He points out that this rule was in keeping with the "sportsmen's rules" of the common-law system. The underlying theory was that a party was not entitled to know or inspect the documentary evidence of the opposing party and, if he took the chance of asking that documents be produced without knowing what they contained, then he should be penalized, if he examined the produced documents, by having them admitted in evidence. This is hardly in keeping with modern trends that a lawsuit is not to be conducted as a contest of skill but rather a search for truth and justice, and discovery of evidence in possession of the opposing party is to be encouraged. Therefore, we refuse to adopt the "English rule."

If opposing counsel had used certain portions of these statements for impeachment purposes, then appellant would have been entitled to have admitted into evidence such other parts thereof that concerned the same subject and were explanatory of the part previously admitted or read by opposing counsel. 7 Wigmore, Evidence (3d ed.), pp. 523, 525, sec. 2113; *Zimmerman v. Zimmerman* (1950), 12 N. J. Super. 61, 79 Atl. (2d) 59.

Appellant cites *Dillenberg v. Carroll* (1951), 259 Wis. 417, 49 N. W. (2d) 444. That case is not in point on the issue here being considered. In *Dillenberg* a statement of a deceased party in interest was admitted because a portion

thereof was against the interest of the person making the statement. It was held that this factor imported an aura of truth to the entire statement. The rule of the *Dillenberg Case* has been subsequently limited so as to require admission of only such other parts of the statement, in addition to the portion which constitutes a declaration against interest, as the trial judge finds to be so closely connected therewith as to be equally trustworthy. *Meyer v. Mutual Service Casualty Ins. Co.* (1961), 13 Wis. (2d) 156, 164, 165, 108 N. W. (2d) 278. In the present case we are not concerned with statements in the nature of declarations against interest.

It is our conclusion that the trial court properly excluded the Kiefert and Krause statements.

### Instructions to Jury.

The first claimed error in instructions has to do with that part of the charge which related to the bus driver's duty under sec. 346.19 (1), Stats., to yield the right-of-way upon the approach of an "authorized emergency vehicle." A police ambulance is clearly an "authorized emergency vehicle" within the definition set forth in sec. 340.01 (3). In this portion of the charge the trial court used the phrase "authorized emergency vehicle" responding to an "emergency call" and then proceeded to define what an "emergency call" was. Appellant contends that "emergency call" was too liberally defined from plaintiff's standpoint. It further maintains that plaintiff's child was not seriously ill, and, therefore, no emergency existed which would have warranted the ambulance driver in sounding the siren and flashing the red light.

We reach the conclusion that the portion of the charge relating to the bus driver's duty to yield the right-of-way to the ambulance by pulling over to the curb and stopping, as required by sec. 346.19 (1), Stats., should not have referred to an "emergency call." In the context of the issues presented herein the obligation imposed by this statute upon drivers of

other vehicles is not contingent on whether the ambulance was then carrying out an emergency call. The element of emergency call, however, would be material in considering the issue of whether the ambulance driver was guilty of negligence in failing to observe certain rules of the road. It is only when responding to an emergency call that he is excused from observing certain rules of the road. Sec. 346.03, Stats., and *Montalto v. Fond du Lac County* (1956), 272 Wis. 552, 76 N. W. (2d) 279.

While it was error for the trial court to interject the element of "emergency call" into that portion of the charge relating to the bus driver's alleged negligence, the overall effect of this error was to favor appellant, not plaintiff. Therefore, we find no prejudice to appellant.

Appellant also attacks the instructions on the further ground that they were duplicitous. It objects that the trial court's charge with respect to the bus driver's negligence covered the element of lookout as well as the element of failure to yield the right-of-way to the ambulance. It cites *Grana v. Summerford* (1961), 12 Wis. (2d) 517, 107 N. W. (2d) 463, in support of its contention that lookout was necessarily embraced within the duty to yield the right-of-way by pulling over to the curb and stopping. We do not consider the *Grana Case* to be in point because that case involved a left turn into a private driveway.

We deem it inadvisable to extend the concept of duplicity to the area of the instructions to the jury. One of the considerations which prompted this court to amend sec. 270.27, Stats., in 1961 under its rule-making power, so as to permit questions in a special verdict to be framed in terms of ultimate fact, was that this would tend to eliminate duplicitous verdicts. Duplicitous verdicts which find overlapping elements of negligence are bad because of their likely effect on the jury in answering the comparative-negligence question. Where a single negligence question framed in terms of ulti-

mate fact is submitted, we deem it unlikely that the jury will segregate particular elements of negligence and assign to each element a certain percentage in answering the comparative-negligence question. Rather we think juries will tend to take an overall view of the negligence of each participant in apportioning percentage of fault. Therefore, even though a trial court instructs on overlapping elements of negligence, this in itself does not constitute error.

*Separate Question With Respect to Existence of Emergency.*

Appellant also assigns as error the trial court's failure to include in the verdict a separate question as to whether an emergency existed insofar as the ambulance's errand was concerned. In discussing this point, appellant's brief refers to the relevance of such question in passing on the bus driver's negligence. As previously pointed out herein, this aspect of emergency, or emergency call, is entirely irrelevant to the duty owed by the bus driver to yield the right-of-way to the ambulance. It would be relevant in passing on the ambulance driver's negligence if the driver had violated certain safety rules in reliance on sec. 346.03, Stats. However, appellant on this appeal seems not to be concerned with the ambulance driver's negligence. The obvious reason for this is that the jury by their verdict did find the ambulance driver causally negligent.

In any event, the determination as to whether to include a special factual question in a verdict that is not necessary in order to have a complete determination of the liability issues, usually lies within the sound discretion of the trial court. We find no merit to appellant's contention in this respect.

*Damage Issue.*

While plaintiff elected to accept the option granted her to take judgment for a reduced amount rather than have a new

trial on the damage issues, she now cross-appeals from that part of the order granting such option which found that the jury's award of $16,000 for impairment of earning capacity was excessive.[3] Under our decision in *Plesko v. Milwaukee* (1963), 19 Wis. (2d) 210, 220, 120 N. W. (2d) 130, plaintiff has this right where the opposing party, as here, appeals.

The issue on this cross appeal is whether the trial court abused its discretion in finding that the $16,000 award was excessive. *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 571, 117 N. W. (2d) 660, and cases cited therein.

Plaintiff at the time of accident was forty-one or forty-two years of age, divorced, and the mother of three minor children. Her permanent total disability was estimated by an expert medical witness as 10 percent of the body as a whole. The other material facts are stated in the memorandum opinion of the trial court as follows:

"The plaintiff did not have an established employment at the time of her injury . . . Where a person is unemployed at the time of injury but had a history of consecutive periods of employment before his injury, the basis of his recovery is the difference due to injury between his earning capacity before the injury and his earning capacity after the injury.

"The history of the plaintiff's employment prior to injury is as follows: She was employed at Albert Trostel & Sons Company from 1955 for approximately two years, but was required to leave this employment due to the fact that she was unable to stand the work. She earned approximately between $80 to $85 a week during this period of employment. Her 1956 income tax return indicates earnings from Albert Trostel & Sons Company of $3,756.24. She also had been a cleaning woman for a period of two years at 757 North Broadway, earning between $30 and $31 per week. She also had a period of employment as a mail sorter in December

---

[3] A cross appeal rather than a motion for review is necessary in order for plaintiff to obtain this review. Sec. 274.12 (4), Stats.

of 1957 and had a period of employment for the Hamilton Manufacturing Company, earning between $35 and $40 per week. She also worked for the Continental Can Company, in the cafeteria of that company, and earned $1.25 per hour. Her last employment was in December of 1957 until March 1958 when she was employed at a laundromat earning 75 cents an hour on a 6-hour day, 6 days a week. She was not employed after March 1958.

"  . . .

"A review of the evidence in this case convinces this court that the award of $16,000 for loss of earning capacity is excessive and cannot be permitted to stand.

"  . . .

"The record discloses that she filed but one income tax return, and that was for earnings for the year 1956. It may be assumed that good citizens obey the law and file tax returns when required to do so in the event there is adequate and sufficient income. Taking into consideration the nature and extent of her employment, and the reasonable probability of her being able to work in the future since there is no evidence of total disability, this court is of the opinion that a reasonable and just amount for loss of earning capacity would be $4,500. This court deems that the situation in this case is such as to warrant the application of the rule of *Powers v. Allstate Ins. Co.* 10 Wis. (2d) 78 [102 N. W. (2d) 398]."

The evidence viewed reasonably as a whole, considered in the light most favorable to plaintiff, supports the facts stated in the above-quoted extracts from the memorandum opinion.

We find no abuse of discretion in the trial court determining the $16,000 award for impairment of earning capacity to be excessive.

*By the Court.*—The judgment appealed from by appellant, together with that part of the order which was the subject of plaintiff's cross appeal, are affirmed. Plaintiff shall be entitled to tax costs on this appeal except that its disbursement for printing her brief and supplemental appendix shall be limited to 28 pages.