MERZ, Plaintiff and Respondent, v. OLD REPUBLIC IN-SURANCE COMPANY and another, Defendants and Third-Party Plaintiffs and Appellants: SEARS, ROEBUCK & COMPANY, Third-Party Defendant and Respondent.

*No. 178. Argued November 2, 1971.—Decided November 30, 1971.*
(Also reported in 191 N. W. 2d 876.)

48

For the third-party plaintiffs-appellants there was a brief by *Edward P. Rudolph* and *Rudolph & Moore,* all of Milwaukee, and oral argument by *Edward P. Rudolph.*

For the plaintiff-respondent there was a brief by *Robert D. Jones* and *Charles M. Hanratty,* attorneys, and *Robert L. Wilkins* of counsel, all of Milwaukee, and oral argument by *Mr. Hanratty.*

For the third-party defendant-respondent there was a brief by *Walther & Halling,* attorneys, and *David B. Halling* of counsel, all of Milwaukee, and oral argument by *David B. Halling.*

WILKIE, J. Several questions are presented in this appeal:

1. Is the jury's verdict exonerating plaintiff of any negligence supported by any credible evidence?

2. Was the jury's award of damages for future pain and suffering excessive?

3. Should the collateral-source rule be modified when Medicare payments are involved?

4. Was it prejudicial error to allow an attorney representing the third-party defendant to testify and impeach a witness against his client?

5. Did the circuit court properly direct a verdict in favor of the third-party defendant, Sears, Roebuck & Company?

*Is the jury's verdict finding no negligence on the part of pedestrian supported by any evidence?*

Appellants contend that the jury's finding of no negligence on the part of respondent Merz is without support in the evidence.

". . . To resolve this issue we must judge the jury verdict in the light of the familiar rules that (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict." [1]

While appellants argue that Merz was negligent in not seeing the taxi before he was struck, the evidence shows that Mr. Merz did indeed see the cab but was simply unable to avoid being struck. Appellants rely upon cases [2] in which the jury found a pedestrian negligent in not seeing the car before it struck him. The jury made no such finding here and there is clearly evidence which backs up their determination. The jury must have considered that Mr. Merz first waited for the cab to pass and then crossed within the crosswalk; the cab then backed up the wrong way on the one-way street, failing to stop at the intersection crosswalk, and failing to yield the right-of-way to Merz.

---

[1] *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 349, 139 N. W. 2d 48; most recently affirmed in *Rodenbeck v. American Mut. Liability Ins. Co.* (1971), 52 Wis. 2d 682, 684, 190 N. W. 2d 917.

[2] *Merkle v. Behl* (1955), 269 Wis. 432, 69 N. W. 2d 459; *Metz v. Rath* (1957), 275 Wis. 12, 81 N. W. 2d 34.

*Was the jury's award of damages for future
pain and suffering excessive?*

Appellants next contend that the award of $9,000 to
the eighty-four-year-old plaintiff for future pain and
suffering is excessive. This contention was made in
motions after verdict and the trial court found the award
not to be excessive. Where such a contention is made
at the appellate level

". . . The verdict will not be upset merely because the
award was large or because the reviewing court would
have awarded a lesser amount, but rather only where it is
so excessive as to indicate that it resulted from passion,
prejudice, or corruption, or a disregard of the evidence
or applicable rules of law." [3]

Our central inquiry must be to the question of whether
there is credible evidence to support the jury's finding.
A separate jury determination was made for pain and
suffering from the time of the accident (January 16,
1969) to the date of trial (April 2, 1970) as $3,000.
Therefore, the finding of the jury as to future pain
and suffering was to cover damages by reason of perma-
nent injury, and pain and suffering subsequent to the
trial.

"Evidence must be viewed in the light most favorable
to the verdict." [4]

After the left hip fracture, Merz had a Jewitt nail
inserted in his injured hip. At the time of trial there
was some limitation of motion. Although the hip opera-

[3] *Kablitz v. Hoeft* (1964), 25 Wis. 2d 518, 525, 131 N. W. 2d
346, citing *Olson v. Siordia* (1964), 25 Wis. 2d 274, 130 N. W. 2d
827; *Makowski v. Ehlenbach* (1960), 11 Wis. 2d 38, 103 N. W.
2d 907.

[4] *Kablitz v. Hoeft, supra,* footnote 3, at page 525, citing *Kin-
cannon v. National Indemnity Co.* (1958), 5 Wis. 2d 231, 92 N. W.
2d 884.

tion was successful there still remained pain with extremes of motion. Merz had a slight limp. Appellants do not question the fact that there are residuals but contend that the evidence as to these residuals does not justify the amount awarded by the jury.

There is no question but that the entire life-style of the plaintiff was changed by this accident. He no longer can do house or yard chores, shopping, or do other things to accommodate his wheelchaired wife. While he had been an active and alert individual prior to the accident, his mobility after the accident was decreased. Under the circumstances we think it is entirely within the range of reason for the jury to award $9,000. Although it may be that his life expectancy was limited to between 2 to 4.2 additional years, this does not mean that he should be foreclosed from receiving the award made here. In recent years we have reviewed a number of jury verdicts in which the claim is made that awards have been excessive in view of the substantial age and short life expectancy of the parties injured. We have said:

"While age and life expectancy are entirely proper items for consideration in the assessment of damage awards, it does not follow that persons of advanced years are to be foreclosed from receiving substantial awards." [5]

We conclude that the evidence supports the jury's award of damages.

### Should the collateral-source rule be modified?

In the present case a portion of respondent's medical expenses were paid by the federal government under the Medicare program. Appellant argues that respondent

---

[5] *Doolittle v. Western States Mut. Ins. Co.* (1964), 24 Wis. 2d 135, 139, 128 N. W. 2d 403. *See also: Erdmann v. Frazin* (1968), 39 Wis. 2d 1, 9, 158 N. W. 2d 281.

should not be entitled to recovery of those sums paid under Medicare because this amounts to double payment. Wisconsin has long been committed to the collateral-source rule which provides that a plaintiff's recovery will not be reduced by the fact that the medical payments were made by some source collateral to defendant.[6] Appellants advance no cogent argument why Medicare payments should be exempted from the collateral-source rule. Indeed, there is no apparent difference between private health insurance and Medicare, other than that Medicare is administered by the federal government. Eligible individuals (like Mr. Merz here) make payments under the Medicare program just as subscribers to private insurance pay premiums.

### The testimony of an attorney appearing on behalf of Sears.

In reviewing the judgment dismissing the third-party complaint by appellants against Sears, Roebuck & Company, the first question presented is whether the trial court properly allowed an attorney for Sears' insurance carrier, Allstate, to testify in an effort to impeach a witness adverse to Sears. Attorney Warren Klaus had participated in the selection of the jury and had made the opening statement on behalf of Sears. He took no further active part in the conduct of the trial, but he appeared as a witness later in the trial. This appearance occurred after the cab driver, Gierach, and the cab company's insurance carrier, Old Republic, called the taxicab passenger to testify. The passenger stated that a Sears truck was blocking North 54th Street. In an effort to rebut this testimony, Sears, over appellants' objection,

---

[6] *McLaughlin v. Chicago, M., St. P. & P. R. R.* (1966), 31 Wis. 2d 378, 395, 396, 143 N. W. 2d 32; *see also: Gatzweiler v. Milwaukee Electric Railway & Light Co.* (1908), 136 Wis. 34, 116 N. W. 633.

called Attorney Klaus who testified that a week before trial the passenger had been unable to identify the truck. Appellants now contend that allowing Attorney Klaus to testify was prejudicial error.

In *Peterson v. Warren* [7] this court indicated that:

". . . The practice of permitting an attorney involved in the case to testify on behalf of his client is generally frowned on by the Canons of Ethics of the American Bar Association and by this court. However, the attorney is competent and the policy against his testifying, while remaining in the case as an attorney for one of the parties, is not absolute and the trial court may, within its discretion, permit the attorney to testify to prevent an injustice or redress a wrong."

It should be noted initially that the Canon referred to in *Peterson* (ABA *Canons of Professional Ethics,* Canon 19) was modified in the 1969 ABA *Code of Professional Responsibility.* [8] Discipline Rule 5–102 (A) of the new code provides:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial . . . ."

In the present case it appears that Attorney Klaus appeared at the time of jury selection and made Sears' opening statement only because Sears' preliminary counsel was otherwise occupied at another jury trial in another court. It further appears that Attorney Klaus' testimony concerned his interview with the witness as part of his duties as an investigator for Allstate Insurance Company. He was a full-time employee of Allstate

---

[7] (1966), 31 Wis. 2d 547, 568, 143 N. W. 2d 560.

[8] Adopted by the Wisconsin Supreme Court on December 16, 1969, effective January 1, 1970, 43 Wis. 2d ix at page xlvi.

and was not a member of the law firm representing Sears.

Canon 5 of the *Code of Professional Responsibility,* as reflected in Discipline Rule 5–102 and Ethical Considerations secs. 5–9 and 5–10, indicates that once an attorney decides to testify his obligation is to withdraw from the case. This, too, is the implication in *Peterson.* In the present case Attorney Klaus' appearance on behalf of Sears was confined to proceedings prior to taking testimony at trial, and only then because the regular attorney could not appear. The distinction between Mr. Klaus' position and that of the other attorneys was made clear to the jury.

Under the circumstances the decision of whether or not to allow Mr. Klaus to testify was within the court's discretion. Furthermore, even if there was an abuse of discretion in allowing Mr. Klaus to testify, that error would be harmless because Mr. Klaus' testimony did not effect the granting of the directed verdict in favor of Sears.

### The directed verdict in favor of Sears.

The trial court granted a directed verdict dismissing the third-party complaint against Sears; appellants contend this was error. On appeal this court will affirm a directed verdict unless the trial court is clearly wrong.[9] In its decision on motions after verdict, the circuit court stated its reasons for directing a verdict in favor of Sears:

"In this court's view, no person of ordinary intelligence could reasonably have foreseen that parking the Sears truck would subject a pedestrian in the crosswalk, 60 to 70 feet south, to an unreasonable risk of injury or dam-

---

[9] *Topel v. Correz* (1956), 273 Wis. 611, 613, 79 N. W. 2d 253.

age, from a vehicle backing into the pedestrian in the crosswalk.

"...

"The burden of proof establishing causal negligence on the part of Sears was upon the defendants. They have failed in that respect.

"We see no escape from all of the credible evidence in the record that the injuries suffered by Merz came solely as a result of the negligence of Gierach."

Were this strictly a case involving proximate cause, there would be a question as to the validity of the directed verdict inasmuch as foreseeability is not an element to be considered in determining proximate cause.[10]

But this case presents a situation in which the cab driver's, Gierach's, actions were classic illustrations of an intervening and superseding cause of Merz' injuries. The trial court indicated that the negligent acts of Gierach which brought about the injuries to Merz intervened after the act of the Sears' employee in parking the Sears truck so as to block passage northward on North 54th Street. The determination of whether a negligent act is a superseding cause is a question of law to be decided by the trial court.[11] In *Merlino v. Mutual Service Casualty Ins. Co.*[12] this court considered what constitutes an intervening or superseding cause and defined such a cause as one which actively operates in producing harm to another after the actor's negligent act or omission.[13] This court stated that in deciding whether an intervening act of negligence was a superseding

---

[10] *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. 2d 29.

[11] *Merlino v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. 2d 571, 579–581, 127 N. W. 2d 741.

[12] *Id.*

[13] *Id.* at page 579, citing Restatement, 2 *Torts*, p. 1185, sec. 441 (1) (Restatement, 2 *Torts* 2d, p. 465, sec. 441 (1)), and Prosser, *Law of Torts* (2d ed.), p. 266, sec. 49.

cause, the criteria should be applied as set down by the Restatement.[14] These are:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Applying these standards to the present case, the trial court was obliged to determine whether Gierach's negligence actively operated to produce harm to Mr. Merz after Sears' negligent act, if any, had occurred. The trial court determined, consistently with the Restatement, that Sears' employee should not have realized that a third person might do what Gierach did, that Gierach's reaction to the situation was extraordinary, and that his action was not the normal consequence of parking the truck in the street as Sears did. The evidence here clearly supports the court's conclusion that Gierach's actions were an intervening and superseding cause of Merz' injuries, and that Sears was in no way responsible for those injuries.

*By the Court.*—Judgments affirmed.

---

[14] *Id.* at page 580, citing Restatement, 2 *Torts*, p. 1196, sec. 447 (Restatement, 2 *Torts* 2d, p. 478, sec. 447).