CLARK, by Guardian, Appellant, vs. MUTUAL AUTOMOBILE INSURANCE COMPANY OF THE TOWN OF HERMAN, Respondent. [Three cases.]

*June 4—June 26, 1957.*

For the appellants there was a brief by *Keefe, Patri, Still-man & Nolan,* and oral argument by *William E. Crane,* all of Oshkosh.

For the respondent there was a brief by *Holden & Schlosser* of Sheboygan, attorneys, and *David K. Allen* of Oshkosh of counsel, and oral argument by *John R. Holden.*

BROADFOOT, J.   Eloys Laatsch was severely injured in the accident, and because of retrograde amnesia resulting from his injuries he had no recollection of any of the events occurring before the collision.  Norine Laatsch testified that shortly before the accident her son became carsick and that she turned around to assist her daughter in caring for him; that she turned and sat down again when the Ross automobile was three or four blocks away; she did not observe the Ross automobile itself but saw a large cloud of dust on the easterly shoulder of the highway; that she called Eugene Laatsch's attention to the dust and then looked at Eloys who had not reduced his speed; that she tapped him on the leg and called out to him just as the Ross automobile suddenly swerved across the highway into their lane, and that Eloys Laatsch then applied his brakes.

Eugene Laatsch, who was seated on the right-hand side of the front seat, testified that he saw the Ross automobile when it was about a quarter of a mile away; that his attention was called to it when the rear wheels skidded onto the easterly shoulder and raised a cloud of dust; that the Ross automobile did not skid at all times but proceeded upon its proper

side of the highway until it suddenly swerved across the highway into the path of the Laatsch car.

The highway had a black-top surface about 24 feet in width and gravel shoulders approximately eight to 10 feet wide on each side thereof. The surface of the highway was dry and the weather was clear. Photographs in the record clearly show the path made by the tires of the Ross automobile as it crossed the highway from the easterly to the westerly side thereof. These photographs indicate clearly that the Ross automobile swerved suddenly and proceeded directly across the highway into the path of the Laatsch automobile. Skid marks upon the highway leading to the Laatsch automobile show that Laatsch had applied his brakes.

One Lukesh, a truck driver, was proceeding northerly upon the highway and he was passed by the Ross automobile approximately a mile south of the point of the collision. He did not see the collision because of an elevation in the highway but was the first one to reach the scene of the accident. He remained at the scene for more than an hour assisting in caring for the injured persons and later in checking the highway for tire marks. From his observation he testified that the Ross automobile left the surfaced portion of the highway and traveled on the east shoulder for some distance. It then partially regained the surface portion and traveled with its left wheels thereon and the right wheels on the shoulder, when it swerved suddenly to the westerly side of the highway to the point of collision.

At the close of the testimony the defendant moved for a directed verdict in each of the three cases. In his memorandum decision the trial judge states that he was of the opinion that the motions should have been granted but decided to submit the matter to the jury, reserving the right to change the answer to any question on motions after verdict. This is a commendable practice that sometimes avoids a new trial. The trial court held that Eloys Laatsch was suddenly faced

with an emergency created by the conduct of Ross. Laatsch was driving in his own lane at approximately 45 miles per hour. Ross was traveling at a high rate of speed but was entirely upon his own side of the highway until he swerved very suddenly into the path of the Laatsch car.

In the trial court, as well as here, the plaintiffs relied upon the case of *Auster v. Zaspel,* 270 Wis. 368, 71 N. W. (2d) 417. In commenting thereon the trial court said:

"That case must be distinguished on its facts, for the reason that the driver Auster observed when the approaching Zaspel car was 2,200 feet away that it was zigzagging from side to side and twice came over into Auster's proper lane of travel before the collision, and that Auster was put on notice that the automobile was driven by someone unable to control it properly. Auster disregarded his wife's caution but drove on without any precaution toward what he thought was a drunken driver whom he could not see until the oncoming car was almost upon him. Under such circumstances the jury had a right to believe that after notice of risk he negligently placed himself and his wife in a position of danger.

"Such, however, is not the instant case, in the opinion of the court. The only thing that might have put the driver Laatsch on notice was the fact that if he had seen a cloud of dust a quarter of a mile away, as Norine Clark Laatsch and Eugene Laatsch testify to, that he was thereby required to conclude as an ordinarily prudent driver that the driver of the oncoming Packard automobile, namely, Ross, would suddenly leave the right or east shoulder and come over onto the west shoulder. This, it would seem, places a responsibility upon a prudent driver far beyond that which the law can expect."

We realize, as did the trial court, that if there is any credible evidence in the record to support the finding of the jury it must be sustained. The plaintiffs contend that from the testimony of Norine Laatsch and Eugene Laatsch the jury could infer that the manner in which the Ross automobile

was operated on the east shoulder of the highway gave Eloys Laatsch ample notice that such automobile was driven by someone unable to control it properly and that he should have taken some affirmative action to prevent an accident. They argue that if Eloys Laatsch had applied his brakes sooner he could either have avoided the accident or at least the severity of the injuries resulting therefrom.

We cannot see any force in this argument. There was nothing in the operation of the Ross automobile that indicated that it would swerve suddenly across the highway. There was nothing about the operation of the Ross automobile to indicate to Laatsch that it would swerve or at what point it would swerve into his path. Had he known where the Ross automobile would cross the highway he might have slowed up or accelerated his speed and thereby avoided being at the point of collision when the Ross automobile reached there. Upon this point the trial court said in its memorandum decision:

"Such argument of plaintiffs, it seems to the court, is purely a view of what Eloys Laatsch should have done in retrospect. Had Eloys Laatsch come to a full and complete stop on the west shoulder of the highway and then been struck by the Ross automobile, the result might have been exactly the same; had Eloys Laatsch slowed his automobile down to five miles an hour, the result might have been the same. In fact, there is no testimony as to how fast the Laatsch automobile was traveling at the moment of the collision. It might as well be argued that had Eloys Laatsch speeded up to 60 miles an hour in order to get by the careening automobile of Ross, the Laatsch automobile would then have been out of the path of the Ross automobile and enabled him (Laatsch) to proceed to Milwaukee without disaster. All these are matters which are purely conjectural."

Upon the matter of the emergency, the trial court said:

"It can readily be seen that the time element available to Laatsch in which to avoid the danger of collision would be

a matter of a very few seconds, and the question necessarily presents itself whether any failure on the part of Eloys Laatsch to so control his automobile so as to avoid the collision could possibly be a cause of the collision.

"It appears to the court that if ever an innocent driver was confronted with an emergency, such was the situation of Eloys Laatsch in the instant situation. About all that can be charged against Eloys Laatsch is that he was on the highway on the morning of the collision at the point near where the Ross automobile went out of control."

We agree with the analysis of the trial court. Laatsch was faced by an emergency not of his own making and to which he did not contribute. The testimony cannot support an inference by the jury that Laatsch was negligent in the management and control of his car. Any such inference is based upon guess and conjecture. Therefore the analysis of the testimony by the trial judge and his determinations must be affirmed.

*By the Court.*—Judgment affirmed.