MEYER, by Guardian *ad litem,* and another, Plaintiffs, v. MUTUAL SERVICE CASUALTY INSURANCE COMPANY and another, Defendants and Respondents: HERMAN MUTUAL INSURANCE COMPANY, Defendant and Appellant.

*February 10—March 7, 1961.*

For the appellant there was a brief by *Cape & Schellinger,* attorneys, and *Stanley F. Schellinger* of counsel, all of Milwaukee, and oral argument by *Stanley F. Schellinger.*

For the respondents Meyer there was a brief by *Silverstein, Warshafsky & Rotter* of Milwaukee, and oral argument by *Robert Silverstein.*

For the respondents Mutual Service Casualty Insurance Company and Ronald Meidl there was a brief by *Hayes & Hayes* of Milwaukee, and oral argument by *Hanlin J. Hayes.*

HALLOWS, J. On this appeal, two questions are raised: (1) Did the court err in directing a verdict for Meidl and

his insurer absolving Meidl from negligence under the emergency doctrine, and (2) did the court err in not admitting in evidence a written statement taken by an employee of the Herman Mutual Insurance Company from Johnson?

A review of the pertinent facts is necessary. Highway 41 at the point of impact is 22 feet wide with shoulders on both sides wide enough for the width of a car. It was daylight, visibility was excellent and the road was dry. About a half mile north of the scene of the accident, Johnson passed a truck which was going between 40 and 45 miles per hour. At that time, Johnson was driving 50 to 55 miles per hour. After passing the truck, Johnson returned to the southbound lane and later gradually pulled onto the west shoulder, leaving the paved portion of the highway 120 feet from the point of impact. He then came back on the highway, crossed the center line and was struck in the east lane by the oncoming Meidl car. Johnson's tire marks extended 145 feet from where he left the pavement to the point of impact and curved to Johnson's left. The tracks were one to two feet wide and indicated some sideways motion of his car on the graveled shoulder. There was no unusual or erratic movement by Johnson before he pulled onto the shoulder. The truck driver behind him thought he was going to stop but did not see any brake lights go on.

Meidl was proceeding north at 60 to 65 miles per hour within the speed limit and saw Johnson on the highway before he went on the shoulder. At that time Meidl thought the distance between the two cars was about 300 feet. There is some conflict on what Meidl then saw, but taking the version most favorable to Johnson, which we must do on this appeal, Meidl did not see Johnson go off the shoulder because he switched his vision from Johnson to the oncoming truck. When he next observed Johnson, Johnson was coming across the highway into Meidl's lane of travel. Meidl braked his car and left skid marks 50 feet long to the point of impact in the east lane. The left front of Meidl's car struck the right front

of Johnson's car which was pushed partly around coming to rest a short distance north of the point of impact and facing northeast. Meidl's car careened off the highway to the east, went down a ditch, and came to rest facing approximately east.

Whether or not Meidl saw Johnson's car go on the west shoulder of the road is immaterial. Meidl had no duty to continuously observe Johnson. Meidl had to direct some of his attention to the oncoming truck. He could not concentrate on both at the same time. Failure of Meidl to do the impossible is not negligence. *Schultz v. Miller* (1951), 259 Wis. 316, 48 N. W. (2d) 477. See also *Koperski v. Hoeft* (1923), 179 Wis. 281, 191 N. W. 571.

Even if Meidl had continued to watch Johnson, it would not have prevented the accident. The appellant argues Johnson went off the road at a high rate of speed and his car was skidding sideways on the graveled shoulder—facts which would have warned Meidl of a dangerous situation ahead if he had been looking. Assuming this to be true, nevertheless Meidl would have been confronted with an emergency not due to his negligence.

When Johnson went off onto the shoulder, the cars were approximately 340 feet apart. If Johnson went on the shoulder at 50 to 55 miles per hour, the rate of speed he passed the truck, he would have traveled the 145 feet to the point of impact in approximately two seconds. Since Meidl was proceeding at 60 to 65 miles per hour, he must have been approximately 200 feet from the point of impact when Johnson left the pavement. The braking distance, including reaction time, at 60 miles per hour is 264 feet. Obviously, Meidl could not have avoided the accident even if he had continuously watched Johnson's car. If we take the time interval from the time Johnson swung back on the road toward Meidl as the danger point, then less than a second remained for Meidl to avoid the accident. At that time, Meidl did see

Johnson and applied his brakes, leaving skid marks 50 feet long to the point of impact. This case is analogous to *Clark v. Mutual Automobile Ins. Co.* (1957), 1 Wis. (2d) 357, 83 N. W. (2d) 873, and *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. (2d) 150.

Meidl was confronted with an emergency when Johnson crossed the center line of the highway into his lane of traffic. It is not argued that Meidl could have done more than he did at that time. The gist of appellant's argument is that Meidl was negligent in not ascertaining the emergency situation was developing when Johnson left the paved portion of the highway and not doing something about it. Appellant relies on *Schmidt v. C. Schlei Dray Line* (1959), 7 Wis. (2d) 374, 97 N. W. (2d) 194, to impute causal negligence to Meidl for failing to put on his brakes when he saw Johnson's car go onto the shoulder some 300 feet away, which was one version of Meidl's testimony.

In the *Schmidt Case* a truck went off the paved part of the road onto the left shoulder when it was unable to pass a car ahead, creating a dangerous situation for the oncoming car. But here, Johnson went onto the shoulder on his own side of the road. We cannot hold that every time a motorist sees an oncoming car gradually go onto the shoulder on its own side of the road, a dangerous situation is created. We find no negligence on the part of Meidl as to lookout or management and control which contributed to the emergency and he is, therefore, entitled to the benefit of the emergency doctrin. *Marshall v. Colburn* (1957), 2 Wis. (2d) 149, 85 N. W. (2d) 815; *Klas v. Fenske* (1946), 248 Wis. 534, 22 N. W. (2d) 596; *Havens v. Havens* (1954), 266 Wis. 282, 63 N. W. (2d) 86; *Sandley v. Pilsner* (1955), 269 Wis. 90, 68 N. W. (2d) 808.

After the accident, the claim adjuster for Johnson's insurer visited Johnson in the hospital and took a two and a fractional page unsworn written statement from him. At the

trial, the appellant insurer unsuccessfully sought to introduce the hearsay statement in evidence on the grounds it contained admissions against interest. Appellant relies on *Dillenberg v. Carroll* (1951), 259 Wis. 417, 49 N. W. (2d) 444. The respondents argue the entire statement was not admissible because it was offered by one united in interest with the deceased declarant, the statement contained self-serving declarations having no bearing or connection with the admissions and the admissions are not in fact declarations against interest. The parts of the statement claimed to be against interest were that the tire which blew out was used, Johnson had been in a tavern before the accident and, "I don't remember seeing the other car at all." In this case, only the part set forth in quotes, which appeared at the end of the statement, can be claimed to be against interest. Other portions of the statement were to the effect that as Johnson approached the scene of the accident, he heard one of his tires blow out, the car started to pull over to the right, went on the right shoulder and started to slide sideways, that he had had a blowout on the right front wheel four weeks before and had obtained a used tire, that he thought his tires were in good condition and had no reason to suspect the tire would blow out. These statements are self-serving and not admissible in evidence. Neither could the insurance adjuster testify as to them. Sec. 325.16, Stats.

It is questionable if such statements had sufficient bearing and connection with the declaration against interest to be an integrated and integral part thereof. Generally, when a declaration against interest is admitted in evidence as an exception to the hearsay rule, the opposing party is entitled to put the rest of the statement in or those parts which have some bearing and connection with the admission. 20 Am. Jur., Evidence, pp. 463, 464, sec. 551. This is generally done to explain or give the proper setting to the declaration.

What the appellant was attempting to do in this case was to get into the record the self-serving declarations contained in the written statement along with a relatively harmless admission against interest. But the declaration against interest was, in effect, against the one offering it. It is an unusual situation where one will offer in evidence an admission against himself. However, the appellant claims this is permitted under the *Dillenberg Case.* In that case, the declarant died before trial and his administratrix as plaintiff offered a statement in its entirety given by the deceased to the defendant's insurance company. Objections were made to the admission of the entire statement but not to the parts against interest which were then offered separately and received. The trial court sustained the objections to the rest of the statement. This court on appeal held that upon admitting the part which constituted a declaration against interest, the other parts of the statement also became admissible on the ground the portion which is trustworthy because against interest imparted credit to the whole statement. The court relied, in part, on *Truelsch v. Miller* (1925), 186 Wis. 239, 202 N. W. 352, in which it is stated, at page 248:

"When it appears that the declarant is dead, that the statement was against his pecuniary or proprietary interest, of a fact of which he was personally cognizant and there was no probable motive to falsify the facts, the declaration may be received as substantive evidence and against third parties."

It is to be noted that the rule on admissibility of declarations against interest contains the element of no probable motive to falsify. This prerequisite should apply equally to the other parts of the statement and if the conditions surrounding the making of a declaration against interest do not assure such trustworthiness, the entire statement ought not to be admitted in evidence as an exception to the hearsay rule.

The *Dillenberg Case* should be distinguished, confined to its facts, and not be extended to the facts in this case where the statement was taken by one united in interest with the declarant. In *Dillenberg,* the statement was taken by the adverse party who had some opportunity to assure the trustworthiness of the complete statement. Here, the opposite party had no opportunity to cross-examine and no safeguards existed to protect the trustworthiness of the statement. More harm and less justice will result from extending the doctrine of the *Dillenberg Case* than by confining the case to its facts. The possibility of future litigants giving statements containing important self-serving declarations mixed with a minor admission against interest to insure the admissibility of the complete statement in the event of the death of the declarant is too great and would lead to fraud and perjury if permitted. This is no great hardship because if one is seriously injured, his testimony may be perpetuated under the present rules of practice. In some cases this may not be possible, but the exception should not be the basis of a general rule.

We do not hold a statement to constitute a declaration against interest must be made to one adverse to the declarant. It may also be made to one united in interest or to a neutral party. *Musha v. United States Fidelity & Guaranty Co.* (1960), 10 Wis. (2d) 176, 102 N. W. (2d) 243. But the entire statement, or those parts sought to be admitted, ought to be made under such circumstances as will impart trustworthiness and credit to it as well as to the part against interest. The preferable rule to be applied in this case is well stated in Rule 509 (2) of American Law Institute, Model Code of Evidence, on page 255:

"(2) . . . evidence of so much of a hearsay declaration is admissible as consists of a declaration against interest and such additional parts thereof, including matter incorporated by reference, as the judge finds to be so closely connected

with the declaration against interest as to be equally trustworthy."

The trial court did not consider the entire document trustworthy and excluded it. That part of the statement constituting a declaration against interest was not offered in evidence separately, and obviously would not be. We find no error.

*By the Court.*—Judgment affirmed.