STATE, Respondent, v. HAUGEN, Appellant.

*No. State 32. Argued October 7, 1971.—Decided November 5, 1971.*
(Also reported in 191 N. W. 2d 12.)

For the appellant there was a brief and oral argument by *John J. Valenti* of Milwaukee.

For the respondent the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HEFFERNAN, J.   While further facts were elicited during the course of trial, they are immaterial to the determination of whether the complaint was sufficient to show probable cause that a crime had been committed and that Haugen had probably committed it.

Evidence adduced at a subsequent trial cannot be used to supply the factual deficiencies of a complaint. As we frequently held, a complaint, including documents that are made a part of it by reference, is a self-contained charge, and it alone may be considered in determining probable cause. *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 173 N. W. 2d 175. Within the four corners of the document must appear facts that would lead a reasonable man to conclude that probably a crime had been committed and that the defendant named in the complaint was probably the culpable party.

A reasonable summary of the facts alleged in the complaint appear in the attorney general's brief:

"The crime charged is theft of 48 candy bars belonging to the University of Wisconsin–Milwaukee.

"Gary Melvin Haugen is the person charged.

"The offense is alleged to have occurred on May 6, 1970, at the U.W.M. union located at 2200 East Kenwood in the city of Milwaukee.

"The defendant is charged because an unidentified male broke the door of a storage case and removed a quantity of candy which he handed to the defendant who then consumed some and gave away the balance.

"Linda Nieft, an officer of the union who personally observed the incident, said so.

"It is immaterial that the person who took the candy from the case is unidentified or that his identity is not alleged to be known to the defendant, for mutuality of agreement may be secured without the conspirators knowing each other and without distinct statement of plan. *O'Neil v. State*, supra, 405.

"The complaint specifically alleges that the unidentified person took property without consent of the owner. Even if it had not, the allegation that a door had to be broken in order to obtain the candy clearly creates that inference.

"The allegation that the unidentified person handed the candy to the defendant after taking it from the case raises a reasonable inference of immediacy which includes inferences that the defendant was present when the candy was taken, that he knew how the candy was taken and that he was or should have been aware that the candy did not belong to the person who broke a door to take it.

"The allegation that the defendant, after receiving the candy from the taker, consumed some and gave away the rest sufficiently establishes the defendant's culpability as a party to the crime of theft in that he aided in the asportation of the stolen goods."

While we agree with the state's reiteration of the facts recited in the complaint, we cannot agree that the inferences that are so readily found by the attorney general are reasonable, nor that the inferences found would cause

a reasonable man to conclude that the defendant was probably a party to the crime of theft.

The state's inferences are questionable, since they rest on the assumption that Haugen saw the unidentified male break a door in a storage case, and that he therefore knew that the candy was unlawfully taken.

These inferences are merely the product of speculation as to what conclusions the defendant might have drawn had he seen the actual breaking. There is no allegation that defendant saw the breaking into the storage case, or that he was in such a position that he should have seen the breaking. The complaint is, rather, a recitation of some of the inferences in regard to the criminal nature of the conduct of the unidentified male that reasonably could have been drawn by Linda Nieft, the complainant, who was the president of the student Union, who knew that the unidentified male was an unauthorized person, and who actually saw the breaking and the extraction of two boxes of candy from the storage case. It was reasonable for Linda Nieft to conclude that the crime of theft had been committed—she was aware of the ownership of the personal property and saw the breaking of the locked case and the actual, if partial, asportation.

The question raised, therefore, is whether a reasonable person, from a reading of the complaint, could conclude that Haugen saw the identical incident, had the same background information as to the authority of the person behind the counter, and therefore could conclude that a theft had been committed. In short, it is necessary to reasonably conclude from the four corners of the complaint that Haugen knew a criminal act had been performed and intentionally undertook conduct to further the accomplishment of the act.

The complaint will not support such inference.

While at some point subsequent to the breaking of the lock and the taking of the candy the unidentified thief handed the candy to the defendant, there is nothing to

indicate that the defendant was in a position to see what Linda Nieft saw, or in fact saw what she saw. There is no factual allegation that would lead a reasonable person to conclude that probably Haugen knowingly and intentionally engaged in conduct that would further the theft. The fatal lacuna of the complaint is the omission of any facts that would reasonably indicate that Haugen was aware of the felonious conduct of the unidentified thief. The complaint merely puts Haugen at the scene of the crime. Unless the facts indicate he was aware that he was furthering a criminal act, his mere presence and ambivalent conduct at the scene of a crime is insufficient to charge a crime.

In *Hawpetoss v. State,* ante, p. 71, 187 N. W. 2d 823, we said that there are two elements that are requisite to make one a party to a crime—the commission of the crime and the party's awareness of its commission.

Here, there is not even an allegation that defendant was aware that a crime was committed. That conclusion, which the drafter of the complaint neglected to allege, has been left for the conjecture of the reader. This conclusion, if inferentially reached, is not reasonable. Under the facts, the conclusion that the defendant was an innocent bystander is equally reasonable.

In *Hawpetoss,* at page 78, we said:

"The elements of complicity, or aiding and abetting are that a person (1) undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance."

"Aid or encouragement to another who is actually perpetrating a felony will not make the aider or encourager guilty of the crime if it is rendered without mens rea . . . . it is the abettor's state of mind rather than the state of mind of the perpetrator which determines the abettor's guilt or innocence . . . ." Perkins, *Criminal Law* (2d ed., University Textbook Series), p. 662.

The statute itself, sec. 939.05 (2) (b), Stats., provides for complicity only where the party charged *"Intentionally* aids and abets the commission of it."* (Emphasis supplied.)

The complaint herein alleges the objective act of receiving the candy. It fails to recite any facts that would indicate even inferentially defendant's state of mind was such that he had a conscious desire to assist in the execution of the crime.

At each stage of the proceedings the various assistant district attorneys prosecuting the case, as well as the assistant attorney general representing the state on appeal, admitted the inartfulness of the complaint, but contended that it skeletally complied with the legal requirements. It is unfortunate that these prosecutorial doubts did not deter prosecution on this complaint. It would have been wise at an early stage of the proceedings to have dismissed the complaint and if possible redraft it to supply the necessary factual allegations that showed the defendant's complicity as an aider or abettor or as a conspirator.[1] Alternatively, defendant could probably have been charged simply as a principal under sec. 939.05, Stats. The state by unsuccessfully attempting to allege the defendant's guilt as a common-law accessory showed that the facts alleged would not in themselves sustain the inference that defendant's conduct was motivated by the requisite *mens rea*. The complaint itself negatived the probability that defendant had the guilty knowledge that a crime had been committed, which state of mind was the *sine qua non* for prosecution against this defendant.

[1] Although the conspiracy theory was urged by the state on appeal and was the foundation of the circuit court's affirmance of the county court, the notes of the Wisconsin Legislative Council committee which revised the statutes make it clear that a conspirator is one who is concerned with a crime prior to its actual commission—a fact not found here. *See Judiciary Committee Report on the Criminal Code*, Vol. 5 (Feb. 1953), p. 5.

*By the Court.*—Order reversed, and cause remanded with directions to dismiss the complaint.

ROBERT W. HANSEN, J. (*dissenting*). In this state criminal warrants are issued by magistrates on the basis of complaints which, given the benefit of all reasonable inferences, are sufficient to establish probable cause that the defendant named committed the offense alleged.[1]

In this case, the claim is that the complaint did not warrant issuance of a warrant because, even given all reasonable inferences, it did not indicate probable cause that the defendant was guilty of aiding and abetting the commission of the crime of theft.[2]

The ". . . basically essential queries that a criminal complaint is statutorily expected to answer . . ." are six in number: Who, what, when, where, why and "who says so?"[3] This six W's test, adapted from the journalistic requirements for a lead paragraph in a news story,[4] requires ". . . making clear to the relator that he is charged with a crime, what the crime is, when and where the offense is alleged to have taken place, why he is

---

[1] *See: State ex rel. Pflanz v. County Court* (1967), 36 Wis. 2d 550, 153 N. W. 2d 559, on functions of complaint and requirements for issuance of valid warrant on such complaint.

[2] *Id.* at page 557, this court stating: ". . . there must be sufficient facts in the complaint which are themselves sufficient or give rise to reasonable inferences which are sufficient to establish probable cause."

[3] *State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 230, 161 N. W. 2d 369.

[4] *Id.* at pages 229, 230, this court stating: "In university journalism classes, students are taught that the lead paragraph to a news story must be made '. . . complete and clear through answering the questions that immediately arise—the so-called "Five W's"—what, who, where, when, why.' . . . Actually, there is a sixth 'W.' As the journalism professor puts it, 'Unless the source (of the news) is obvious, the reader always asks at once, "Who says so?"'" (citing *Newspaper Reporting*, by Grant Milnor Hyde, Prentice-Hall (1952), pp. 53, 55.

believed to have committed the [crime] and who said so." [5]

Here is how the particular complaint in this particular action answers the six questions of the W's test:

*What* is the charge: Violation of sec. 939.05, Stats.,[6] and sec. 943.20 (1) (a) [7] in that he:

". . . did as party to the crime . . . intentionally take and carry away movable property of the University of Wisconsin–Milwaukee to wit: 48 candy bars of total approximate value of $7.20 without the consent of the University of Wisconsin–Milwaukee and with intent to permanently deprive University of Wisconsin–Milwaukee of possession thereof."

*Who* is charged: Gary Melvin Haugen, named defendant.

---

[5] *Id.* at page 230.

[6] "**Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

[7] "**Theft.** (1) Acts. Whoever does any of the following may be penalized as provided in sub. (3) :

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property."

*When* did offense occur: On "the sixth day of May A. D., 1970."

*Where* did offense occur: At "2200 E. Kenwood, City and County of Milwaukee."

*Who* makes complaint: Linda Nieft, student president of the University of Wisconsin–Milwaukee."

*Why* is he believed to have committed the crime of aiding and abetting the theft: Based on personal observation, the complainant states in the complaint:

". . . that on 5/6/70 at said Union she observed a male break the door on a storage case containing candy which was the property of the University of Wisconsin–Milwaukee; that the said male took two 24 bar boxes of candy of the total approximate value of $7.20 and handed them to the defendant; that the defendant consumed one candy bar and gave the balance to other persons who had congregated in said Union."

The court majority holds that "within the four corners" of this complaint there cannot be found facts stated and reasonable inferences therefrom to establish probable cause that the defendant ". . . intentionally undertook conduct to further the accomplishment of the act," the reference being to the act of breaking and taking the candy. The majority finds "equally reasonable" the conclusion from "the four corners" of the complaint that the defendant was "an innocent bystander."

The writer would hold that this complaint adequately stated facts sufficient, together with reasonable inferences drawn therefrom, to justify the issuance of the warrant by the magistrate, charging the defendant with being an aider and abettor to the crime of theft. The defendant was not charged with breaking the door open and removing the two boxes of candy from the storage case in which they had been locked. He was charged with being a party to the crime of theft by aiding and

abetting its commission.[8] The basis for the issuance of the warrant is the clear allegation in the complaint, based on the personal observation of the complainant, that defendant completed the criminal act of theft by dispersing the candy taken among the people assembled, making impossible its return to its lawful owner: the University of Wisconsin—Milwaukee. One of the elements of the crime of theft is that of asportation.[9] It is the element of the completed crime of bank burglary provided by one who drives away with the loot. It is no defense for such driver to establish that he did not enter the bank and steal the money. When he provides transportation, he supplies asportation. When the complaint alleges that the defendant took and dispersed or distributed the candy, making impossible its return, it alleges that the defendant furnished the element of asportation to the sequence of events that completed the act of theft.

Based on the personal observations of the complaining witness, the complaint alleges a sequence of events, all occurring at one time and place. The complaint states that a male person, not identified by name and presumably unknown to the complainant, did in her presence break open the door of a storage case belonging to the University of Wisconsin-Milwaukee. It states that such person, after breaking open the door, took two 24-bar boxes of candy from the storage case. It states that the breaker and taker then "handed them to the defendant." It states that the defendant did then and there hand out all except one of the candy bars to persons in the as-

---

[8] Under sec. 939.05, Stats., a person may be charged as a principal to a crime if he intentionally aids or abets or if he is a party to a conspiracy to commit the crime.

[9] "*Asportation.* . . . The carrying away of goods; one of the circumstances requisite to constitute the offense of larceny. . . ." Black's Law Dictionary (4th ed. rev.), page 147. *See: Hawpetoss v. State,* ante, p. 71, 77, 78, 187 N. W. 2d 823.

sembled crowd. It is an entirely reasonable inference from the facts stated that the defendant completed the act of theft by furnishing the element of asportation. It is an entirely reasonable inference from the complaint that there existed probable cause that the defendant had thus aided and abetted the commission of the crime of theft—by distributing what had been stolen to the assembled crowd and making impossible its return, thus permanently depriving the University of Wisconsin–Milwaukee of possession. Intent is specifically alleged, and clearly inferable from the facts stated in the complaint. Intent is to be inferred from the natural and probable consequences of a person's voluntary acts.[10] Intentional aiding and abetting of the crime of theft appears to the writer to be not only a reasonable inference, but the only reasonable inference to be drawn from the facts stated in this complaint.

Holding the complaint to be clearly adequate, meeting the six W's test in each requirement of it, requires reviewing whether there was sufficient evidence presented at trial for the trier of fact (here the trial court) to find beyond a reasonable doubt that the defendant was guilty under secs. 939.05 and 943.20 (1) (a), Stats. The testimony is in dispute and the issue for the court was one of comparative credibility. If the defendant's testimony is accepted, he did not receive the two boxes of candy and was just walking by and took one candy bar which he ate. This testimony is in conflict with that of a detective who testified he found the defendant leaning on the main desk when he arrived. More significantly, it conflicts in every detail with the testimony of the complainant. She testified that she had known the defendant previously, and identified him as taking two boxes of candy from the man who broke into the storage case.

[10] *See: Hawpetoss v. State, supra,* at page 80.

She testified that the building and counter were closed, and that the counter was broken into by shoving the sliding door until the lock gave way. She testified that the person who broke into the storage case "handed over" the two boxes to the defendant. She testified that the defendant kept one bar, and handed the rest out to passers-by and persons in the assembled crowd. It was for the trial court, not the reviewing court, to determine which witnesses were to be believed.[11] Apparently, the trial court did not believe the testimony of the defendant, and, accepting the testimony of the complainant and detective, had evidence sufficient to convince him beyond any reasonable doubt that the defendant was guilty of aiding and abetting the commission of the theft, contrary to secs. 939.05 and 943.20 (1) (a).

The writer would affirm, holding the complaint to be adequate and the conviction sustained by the evidence.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.

---

[11] *See: State v. Christopher* (1969), 44 Wis. 2d 120, 127, 170 N. W. 2d 803, this court stating: "On review, it is not the function of the appellate court to decide which witnesses are to be believed. That is the exact function of the trier of fact, be such trier of fact the judge or a jury. . . ." *See also: Lock v. State* (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.