STATE of Wisconsin, Plaintiff-Respondent,

v.

Norman Paul PEPIN, Defendant-Appellant.†

Court of Appeals

*No. 82–1147. Submitted on briefs November 11, 1982.—Decided December 27, 1982.*
(Also reported in 328 N.W.2d 898.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Kirbie Knutson,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

DECKER, C.J.   Norman Pepin appeals from an order denying his postconviction motion for a new trial on the ground that he was denied due process of law when the trial judge erred in excluding Pepin's out-of-court statement on hearsay grounds. We agree with the trial court that the statement was properly excluded, and accordingly affirm.

Pepin was found guilty of three counts of armed robbery, two counts of first-degree murder, and one count of attempted murder,[1] arising out of an incident in which Pepin and another robbed three men whom they ordered to lie face down. Two of the victims were then shot and killed. The third was not injured, but was apparently left for dead. Although the third victim saw Pepin brandish the weapon prior to the shooting, he did not see the shooting itself.

---

[1] Pepin was found guilty of the armed robberies by the trial court and found guilty of the other charges by the jury.

The day after the shooting, Pepin made a statement to Milwaukee county deputy sheriffs in Chicago in which he implicated himself in the robberies, but denied doing the actual shooting. At trial, Pepin pled no contest to the robbery charges, and not guilty to the murder and attempted murder charges. Pepin's attorney attempted to enter Pepin's Chicago statement into evidence over the state's objection. Judge Marvin C. Holz, presiding in the trial court, ruled the statement to be inadmissible as hearsay.[2] The jury found Pepin guilty on all counts.

Pepin's postconviction motion for a new trial was denied by Judge John F. Foley on the ground that his Chicago statement was without trustworthiness. We agree with Judges Holz and Foley that Pepin's Chicago statement was hearsay and inadmissible, secs. 908.01(3) and 908.02, Stats., unless it was an exception to the hearsay rule, sec. 908.045(4), Stats.[3]

The inculpatory statement of Pepin implicating him in the robberies can only be viewed as an admission pursuant to sec. 908.01(4)(b)1 or (5), Stats., if it had been offered by the state against Pepin. In this case, Pepin proposes to offer the statement in support of his position; it is not an admission. If admissible, the statement must qualify as an against-interest exception to the rule against hearsay. Pepin proposes to piggyback the ex-

[2] We note that, given the content of Pepin's Chicago statement, Pepin's allegation of error is predicated upon a ruling which affected a substantial right under sec. 901.03(1), Stats. *See* sec. 805.18, Stats.

[3] Section 908.045, Stats., sets forth hearsay exceptions where the declarant is unavailable. While Pepin never explicitly made himself unavailable by taking the stand and pleading the fifth amendment, we need not belabor that point because we find the statement inadmissible even if Pepin were unavailable. For that same reason, we need not address the state's contention that Pepin's statement would have required corroboration to be admissible because, as we note elsewhere in this opinion, there was no corroboration.

culpatory portion of the statement into evidence to prove the truth of his assertion that he did not do the actual shooting.

The state does not dispute that the inculpatory portion of the statement is against Pepin's penal interest, but contends that the trustworthiness of the inculpatory statement does not extend to the exculpatory part of the statement.

The Judicial Council Committee's Note to sec. 908.045 (4), Stats., refers to *Meyer v. Mutual Service Casualty Insurance Co.*, 13 Wis. 2d 156, 108 N.W.2d 278 (1961), and reads in part as follows:

This sub. does not modify the rule of *Meyer* that evidence of so much of a hearsay declaration is admissible as consists of a declaration against interest and such additional parts thereof, including matter incorporated by reference, as the judge finds to be so closely connected with the declaration against interest as to be equally trustworthy. 13 Wis. 2d at 164, 108 N.W.2d at 282. 40L W.S.A. 530 (1975).

The test for the admissibility of such an against-interest statement is whether the exculpatory portions are sufficiently closely connected to the inculpatory portion so as to be equally trustworthy. This test was not applied by the trial court in determining whether to admit or exclude the statement.

Pepin urges this court to regard the question of admissibility under a hearsay exception as a question of law based on the principle in *Nottelson v. DILHR*, 94 Wis. 2d 106, 115–16, 287 N.W.2d 763, 768 (1980), that "whether the facts fulfill a particular legal standard is a question of law." The issue as Pepin would have it framed is: "Do the exculpatory sections of the against-interest statement fulfill the particular legal standard of sufficient indicia of trustworthiness to justify the admission

of the statement under a hearsay exception?" The issue, as thus framed, would be one in which this court could review the question *de novo* under the familiar doctrine that a reviewing court need not give special deference to a trial court's determination of a question of law.[4] *First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

While we believe that this argument is not without logical integrity, we are also mindful of the proposition that the question of admissibility of hearsay evidence lies within the sound discretion of the trial court. *See State v. Lenarchick,* 74 Wis. 2d 425, 450, 247 N.W.2d 80, 93 (1976). Insofar as the framing of the issue governs our mode of review,[5] we believe it appropriate to discuss appellate review of discretionary acts.

"[A]ll appellate Gaul is divided into three parts for review purposes: questions of fact, of law and of discretion." Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above,* 22 Syracuse L. Rev. 635, 645-46 (1971).

The rationale behind all appellate review may be fairly characterized in two extremes: an appellate court will defer in large part to a trial court's determination where the lower court is in a better position to make that determination than is the appellate court; conversely, little or no deference is accorded where the appellate court is as capable of determining the question as is the trial court. Questions of fact are accorded deference because the trial court was present at the reception of evidence and had an opportunity to view the demeanor of witnesses and

---

[4] Such a standard of review would be particularly pertinent where, as here, the statement in issue is both documentary and uncontested.

[5] If the issue is one of law, our review is generally broad; if one of discretion, more limited.

assess their credibility. *See Grutzner v. Kruse,* 87 Wis. 2d 38, 42, 273 N.W.2d 373, 375 (Ct. App. 1978). Questions of law, on the other hand, are traditionally accorded little or no deference because there is nothing intrinsic to their determination which gives the trial court any advantage over an appellate court. Questions of discretion, however, have not been so clearly delineated.

What an appellate court may do with a misuse of trial court discretion is open to some dispute. One line of authority suggests that misuses of discretion must be remanded to the trial court on the principle that "[t]he court which is to exercise the discretion is the trial, not the appellate, court." *Wisconsin Association of Food Dealers v. City of Madison,* 97 Wis. 2d 426, 434, 293 N.W.2d 540, 545 (1980), *quoting Culligan, Inc. v. Rheaume,* 269 Wis. 242, 247–48, 68 N.W.2d 810, 814 (1955). Another line of authority suggests that gaps in the reasoning process underlying a discretionary act may be supplied by the appellate court: "In cases where the trial judge has failed to set forth his reasons [for the exercise of judicial discretion in a civil case where damages are disputed in motions after verdict], we examine the record *ab initio* to resolve the post-verdict damage questions." *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 520 (1971), *citing Boodry v. Byrne,* 22 Wis. 2d 585, 589, 126 N.W.2d 503, 505 (1964). *See also In re the Termination of Parental Rights to T.R.M.,* 100 Wis. 2d 681, 688, 303 N.W.2d 581, 583 (1981) [which permits an appellate court faced with inadequate findings, *inter alia,* to review the record anew] ; and *State v. Lenarchick, supra* [which states that the exercise of discretion in determining admissibility of hearsay will be upheld unless the record demonstrates that the ruling is manifestly wrong].

If conflict exists between these lines of authority, it may be attributable to the wide area which judicial dis-

cretion covers. *See* Rosenberg, *supra*, at 635. A rational resolution of that conflict may be attempted by an examination of the kinds of discretion entrusted to trial courts.

Wigmore, in his treatise on evidence,[6] discusses judicial discretion and divides it into two categories: discretion in the strict sense, which applies when the trial judge is controlled by no fixed rules; and finality of ruling, which means that the trial judge decides according to some rule, but that his decision is final either as to the law, the applicability of the law to the facts, or as to the existence of the facts. The first variety, or strict discretion, "is by our law not conceded to any trial judge on points of evidence, except perhaps in 'ex parte' and interlocutory proceedings."[7] It is evident, then, that what is termed trial court discretion in the admissibility of evidence is, by Wigmore's definition, more accurately denominated as "finality of ruling." This is an accord with Wisconsin case law that it is possible for an appellate court to premise a misuse of discretion upon an error of law. *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968). We deem it permissible to separate a trial court's discretionary act into its constituent parts (e.g., law, application of law to facts, and facts) and determine which of them is entitled to deference from an appellate court.[8]

The trial court determined that Pepin's statement to Chicago police was excludable as hearsay, but failed to analyze the statement in an against-interest hearsay exception context. To do so required it to apply the

[6] 1 J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trial at Common Law* § 16 (3rd ed. 1940).

[7] *Id.*

[8] Such an analysis is not unlike that applied in Wisconsin to mixed questions of fact and law. *See Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd,* 447 U.S. 207 (1980).

proper legal standard from *Meyer, supra,* that the exculpatory portions of the document must be equally trustworthy to the inculpatory portion to be admissible. As such, the trial court misused its discretion by failing to apply the proper rule of law.

There is substantial evidence that at the time Pepin's Chicago statement was made, he knew that one of the robbery victims had survived and could, if afforded the opportunity, identify him. There is additional evidence that Pepin's accomplice had "finked" on Pepin, and that Pepin had retaliated by "finking" on the accomplice. There was also testimony that Pepin knew that he was in trouble with the police as a result of the crimes.

Most of the foregoing evidence was supplied by a Milwaukee law enforcement officer and was based upon his conversation with witness Anthony Russo. At trial Russo denied supplying such information to the officer.

While the trial court could has weighed this evidence because it was privy to the demeanor of the witnesses and could determine their respective credibility, we may not do so for it would be an exercise by an appellate court of the kind of discretion which is granted to a trial court. We therefore disregard this disputed evidence.

We note that the trial court could only have concluded from the weighing process that the exculpatory portion of the statement was untrustworthy. Had the trial court concluded that Russo's testimony was more credible than that of the law enforcement officer, then all those circumstances did not exist, according to Russo, and there would be the same evidence before the trial court that is before us. For the reasons we now address, the trial court would not be in any better position than we to determine the trustworthiness of the exculpatory portion of the statement.

In this case we need not remand in order to allow the trial court to exercise its discretion because we believe that the application of a well-settled principle of law to an undisputed fact is itself a question of law, *Nottelson, supra.* We note that this against-interest statement is documentary;[9] that it was made is undisputed; its maker chose not to testify and so no demeanor evidence exists. The trial court would be in no better position to determine this question of law than are we. Although sec. 901.04, Stats., accords to the trial court the use of resources[10] that may not always be available to an appellate court, no request to implement these resources was made by Pepin in this case.

Our supreme court has stated:

It is to be noted that the rule on admissibility of declarations against interest contains the element of no probable motive to falsify. The prerequisite should apply equally to the other parts of the statement and if the conditions surrounding the making of a declaration against interest do not assure such trustworthiness, the entire statement ought not to be admitted in evidence as an exception to the hearsay rule. *Meyer, supra,* 13 Wis. 2d at 163, 108 N.W.2d at 282.

---

[9] Pepin's Chicago statement was tape recorded. It was transcribed, marked as exhibit 24 and offered in evidence by Pepin. The offer of the exhibit was rejected by the trial court.

[10] By use of the term "resources," we refer, for example, to the exemption of the trial judge from the rules of evidence (except privileges): his opportunity to see an item of evidence although not yet received into evidence; his opportunity to consider an item of conditional relevance (whether a spoken statement under circumstances where it could have been heard and thus gave notice to the hearer); the qualification of an expert witness; the existence of a privilege or an immunity; the fulfillment of foundation testimony to exempt evidence from an exclusionary rule; the fulfillment of the authentication or identification requirements. The list of these circumstances is not exhaustive; the circumstances themselves are not invariably applicable.

There can be no question that, to avoid the murder charge, Pepin had a probable motive to falsify at the time the statement was made. There is nothing inherently trustworthy about a statement which, while inculpating the declarant as to armed robbery, simultaneously attempts to exculpate him as to first-degree murder and an automatic life sentence. What is gained in the self-serving portion of the statement more than makes up for what is lost in the disserving portion, especially since Pepin chose to plead no contest to the armed robbery charges.

We also note that it is undisputed in the evidence that while in Chicago, Pepin used a credit card and a driver's license of one of the victims. Certainly Pepin must have been aware that such evidence could tie him to the crimes.

In *State v. Brown,* 96 Wis. 2d 238, 242–45, 291 N.W.2d 528, 531–33, *cert denied,* 449 US 1015 (1980), our supreme court set forth four considerations from *Chambers v. Mississippi,* 410 US 284 (1973), to be used in determining the reliability of third-party hearsay sought to be used by the defendant in his own defense and excluded by the trial court. These considerations are equally pertinent here where the defendant seeks to offer his own out-of-court statement.

First, in *Chambers,* each of the declarant's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Here, Pepin's statement was neither spontaneous nor made to a close acquaintance which would have, as our supreme court noted, imparted a greater likelihood of veracity to it. *Brown, supra,* 96 Wis. 2d at 243–44, 291 N.W.2d at 531–32.

Second, there is no corroboration for the statement by other evidence in the case.

Third, the concomitant exculpatory purpose of avoiding the far more serious charge of murder severely narrows

the extent to which the hearsay statement is self-incriminatory and against the penal interest of the declarant.

Fourth, the declarant's availability to testify is inapposite here, since the defendant has the right to choose not to testify.

We affirm the trial court's conclusion that the statement was properly excludable as hearsay.[11]

*By the Court.*—Order affirmed.

---

[11] We reject Pepin's contention that he was denied due process under the holding of *Chambers v. Mississippi,* 410 U.S. 284 (1973). The Supreme Court stated that "[t]he testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest." *Id.* at 302. Such is not the case here; were it so, the statement would have been admissible. *Chambers* is, therefore, inapposite, because nothing in *Chambers* establishes or even suggests a constitutional mandate to admit untrustworthy evidence on due process grounds. *See id.* at 298–300.