# IN the INTEREST OF L.A.T.: SHEBOYGAN COUNTY, Appellant,

v.

# D.T., Respondent.†

## Court of Appeals

*No. 90-2670. Submitted on briefs August 19, 1991.—Decided February 19, 1992.*

(Also reported in 481 N.W.2d 493.)

† Petition to review denied.

On behalf of the appellant, the cause was submitted on the brief of *James W. Frisch,* district attorney, and *James P. Van Akkeren,* assistant district attorney.

On behalf of the respondent, the cause was submitted on the brief of *Matthew H. Huppertz,* of *Carlson & Huppertz, S.C.* of Waukesha.

Before Nettesheim, P.J., Brown and Snyder, JJ.

NETTESHEIM, P.J.  The county of Sheboygan appeals from an order dismissing its second amended

petition alleging that L.A.T. is a child in need of protection and services (CHIPS). The juvenile court concluded that the petition failed to give D.T., the father of L.A.T., reasonable notice as to the time frame when certain alleged sexual conduct occurred between D.T. and L.A.T.

## THE STATUTE

The juvenile court premised the dismissal on the requirements of sec. 48.255, Stats., which addresses the form and content of a petition in a ch. 48, Stats., proceeding, including a CHIPS action. The statute provides in relevant part:

**(1)** A petition initiating proceedings under this chapter . . . shall set forth with specificity:

. . ..

(e) If the child is alleged to come within the provisions of s. 48.13(1) to (11) [CHIPS] or 48.14, *reliable and credible information* which forms the basis of the allegations necessary to invoke the jurisdiction of the court and *to provide reasonable notice of the conduct or circumstances to be considered by the court* . . .. [Emphasis added.]

## PROCEDURAL HISTORY

Although the issue in this case concerns the county's second amended petition, we also address the two prior petitions in order to provide the background necessary to an understanding of the appellate issue.

All three petitions were made by Jackie Erdmier, a social worker with the Sheboygan County Department of Human Services and an intake worker with the juvenile court. The introductory portions of all three petitions are similar and are based upon statements provided to Erdmier by L.A.T.'s mother: she and D.T., the father,

are divorced and have joint custody of L.A.T.; L.A.T. had resided with D.T. for most of September 1989; on September 29, L.A.T. was scheduled for a visit with her father, but expressed reluctance to do so. L.A.T.'s mother thought this strange because L.A.T. usually enjoyed visiting with her father. L.A.T.'s mother convinced L.A.T. to visit with her father by telling L.A.T. that she would be staying with her grandparents. When L.A.T. returned from this visitation, she complained to her mother about soreness in her labia.

At this point, the first petition dramatically differs from the later petitions. The first petition goes on to relate interviews with L.A.T. conducted by another social worker with the department and a detective with the Ozaukee County Sheriff's Department. In this interview L.A.T. related an incident when D.T. allegedly tied her hands behind her back and placed a mask over her face. L.A.T. also stated that there were bright lights and that D.T. had a camera. Using an anatomically correct doll, L.A.T. demonstrated where D.T. had touched her with his fingers.[1]

In response to this initial petition, D.T. brought various motions, including a "Motion To Make More Definite And Certain." The substance of the motion contended that the petition did not provide D.T. with "reasonable notice of the conduct or circumstances to be considered by the Court or jury, nor does the petition provide reasonable notice of the allegations upon which to prepare a defense . . .." The motion was brought pursuant to sec. 48.255(1)(e), Stats., and on various constitutional grounds.[2]

---

[1]It is not clear from the initial petition whether the alleged touching occurred at the time of the alleged "bondage/mask" episode.

[2]The constitutional grounds are not before us on this appeal.

On June 26, 1990, before any hearing on D.T.'s motions, the county brought a motion to amend the petition. The district attorney's affidavit in support of this request recited that L.A.T. had recently told Erdmier that her father had not touched her at the time of the "bondage/mask" episode. Instead, L.A.T. recited that her father had touched her private parts "a long time ago." The district attorney also stated that Erdmier had recently conducted a video taped interview with L.A.T. in which L.A.T. stated that D.T. had touched her vaginal area while they were lying on a bed in his bedroom. L.A.T. stated that this episode occurred during a visit with D.T.

The county set out these new allegations in greater detail in a proposed amended petition which accompanied the district attorney's motion. As we have previously noted, this proposed amended petition mirrored the introductory portions of the initial petition concerning the events of September 1989 when L.A.T. expressed reluctance to visit her father and complained of soreness in her labia. However, the amended petition did not allege the "bondage/mask" episode. Instead, the amended petition alleged an episode when D.T. touched L.A.T. between her legs while in his bedroom and while both were fully clothed. L.A.T. said that this happened "once when she stayed with her dad for a long time while her mom was fixing up Tanya's house." Again, using an anatomically correct doll, L.A.T. demonstrated and explained how D.T. had touched her in the vaginal area. She also stated that this occurred when she was "three years old." L.A.T. was born in September 1985.

The amended petition also recited that L.A.T.'s mother and D.T. lived together until February 1988. Thereafter, L.A.T. lived with her mother and L.A.T.'s visitations with D.T. were supervised through June

1989. Thereafter, L.A.T.'s visits with D.T. were unsupervised.

The juvenile court conducted a hearing which addressed both the county's request to file the amended petition and D.T.'s motions. Although D.T.'s motions were directed at the first petition, it appears that the parties and the court functionally treated these motions as also challenging the amended petition. After hearing the arguments of counsel, the juvenile court granted the county's request to file the amended petition. However, the court agreed with D.T. that the amended petition did not provide reasonable notice as to when the allegations occurred. The court permitted the county an additional five days to file a second amended petition with greater specificity.

The county did so on August 7, 1990. The second amended petition is a replica of the amended petition except for the final paragraph which alleges that until July 3, 1989, L.A.T.'s mother rented an apartment in a building she owns to Tanya Behr. After July 3, L.A.T.'s mother was performing extensive remodeling in the apartment and, as a result, L.A.T. spent many weekdays at her father's home. This arrangement continued through September 1989.

D.T. responded to the second amended petition with a motion to dismiss. D.T. again argued pursuant to sec. 48.255(1)(e), Stats., that the petition did not give him reasonable notice of the conduct or circumstances to be considered by the court at the trial of the action. At the motion hearing, the county and D.T. broadened the scope of inquiry to more than just the allegations of the petition. They also addressed the effect of a video taped interview of L.A.T. conducted by Erdmier on June 20, 1990. D.T.'s counsel, who had previously viewed the tape, argued that L.A.T. stated during the interview that

D.T.'s sexual advances did not occur during the time period argued by the state on the basis of the second amended petition.

The parties agreed that the juvenile court should view the tape and consider it, in addition to the second amended petition, when ruling on D.T.'s motion to dismiss.[3] After doing so, the court again concluded that the second amended petition "does not place a reasonable person on notice as to any time frame within which the alleged contact took place . . .." The county appeals.

## STANDARD OF REVIEW

■ The sufficiency of a pleading presents a question of law. *See State v. Haugen,* 52 Wis. 2d 791, 793, 191 N.W.2d 12, 13 (1971). This standard of review is not altered in this case because the juvenile court also considered L.A.T.'s video taped interview. The video tape is part of the appellate record and we also have reviewed it. As one commentator has recently observed, "an appellate court defers to a determination made below when it has reason to believe that the lower tribunal was, for whatever reason, in a better position to make that particular determination." Hofer, *Standards of Review—Looking Beyond The Labels,* 74 Marq. L. Rev. 231, 250 (1991).[4] Here, the juvenile court had no special

---

[3]Thus, D.T.'s challenge to the petition took in more than the four corners of the complaint. Ordinarily, a challenge to the sufficiency of a pleading is confined to the pleading itself. *See State ex rel. Evanow v. Seraphim,* 40 Wis. 2d 223, 229-30, 161 N.W.2d 369, 372-73 (1968); *State v. Haugen,* 52 Wis. 2d 791, 793, 191 N.W.2d 12, 13 (1971). Here, however, all parties agreed to the procedure which broadened the scope of the inquiry.

[4]Although adhering to the traditional labels of "law" and "fact," the court of appeals in *State v. Pepin,* 110 Wis. 2d 431, 328

advantage over us in reviewing the materials which concerned the sufficiency of the second amended petition. We therefore are not required to accord any special deference to the court's ruling.

## ANALYSIS

We first address the principles governing the sufficiency of a petition in a juvenile court proceeding. No case has ever directly considered this question. However, we conclude that the same principles which govern the sufficiency of criminal complaints should apply. *See State ex rel. Evanow v. Seraphim,* 40 Wis. 2d 223, 229-30, 161 N.W.2d 369, 372-73 (1968). These require that the pleading recite the "essential facts" constituting the basis for the action. *Id.* at 229, 161 N.W.2d at 372. An encyclopedic listing of all the evidentiary facts is not required. *Id.* Rather, the petition should recite what is alleged, who is charged,[5] when and where is the activity alleged to have taken place, why is the action brought, and who makes the allegations. *Id.* at 230, 161 N.W.2d at 372.

Measured from these principles, we conclude that the "what," "who," "where" and "why" inquiries are satisfied in this case. The petition clearly seeks CHIPS relief based upon L.A.T.'s allegations of sexual conduct against her by D.T.

---

N.W.2d 898 (Ct. App. 1982), engaged in a similar "deference" analysis. *Id.* at 435-36, 328 N.W.2d at 900.

[5]We recognize that in a CHIPS proceeding, a person is not "charged" as in the criminal law. Nonetheless, a CHIPS proceeding many times has accusatory overtones. Thus, in assessing the sufficiency of a pleading, it is appropriate to ask whether those affected by the proceeding are sufficiently identified.

Rather, it is the "when" component of this inquiry which is raised by D.T.'s challenge. The answer to this inquiry does not leap off the page. However, we are permitted to draw reasonable inferences from the allegations of a pleading. *Id.* at 228, 161 N.W.2d at 371.

L.A.T. related to her mother in late September 1989, that she did not want to visit with D.T. Nonetheless the visit took place. When L.A.T. returned from this visit, she complained of soreness in her labia. When interviewed thereafter, L.A.T. reported sexual activity against her by D.T. She stated that some of this activity occurred while her mother was "fixing up Tanya's house." The final paragraph of the second amended petition places this remodeling period between July 3 and September 1989. The county argued that this additional allegation served to circumstantially and inferentially narrow the time frame of L.A.T.'s allegations to that time span. This is a logical and fair inference to draw from these allegations. This conclusion is strengthened when we factor in that D.T.'s unsupervised visitations with L.A.T. covered the same time period and that L.A.T. spent most of September with D.T.

Drawing fair and reasonable inferences from these allegations, we conclude that the second amended petition alleges sexual conduct by D.T. against L.A.T. between June 1989 and the return of L.A.T. from her September 29, 1989 visit with D.T. Thus, the petition states with requisite specificity reliable and credible information necessary to invoke the juvenile court's jurisdiction and to provide reasonable notice of the conduct or circumstances to be considered by the court. Thus, we reject D.T.'s argument that the allegations are overly broad and reach too far back into the past.

We make this conclusion fully aware that portions of L.A.T.'s other statements detract from or contradict her allegations which inculpate D.T. However, we must be mindful that the allegations in this case come from a child. *State v. Fawcett,* 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988), instructs that some liberality must be permitted when gauging the sufficiency of the allegations of an alleged child sexual assault victim. *Id.* at 249, 426 N.W.2d at 94. We further said: "Young children cannot be held to an adult's ability to comprehend and recall dates and other specifics. *Id.* "The vagaries of a child's memory more properly go to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution in the first instance." *Id.* at 254, 426 N.W.2d at 96. Thus, the law recognizes a child's various renderings of an event may contain inconsistencies, vagaries and even contradictions which are not, in and of themselves, fatal to the prosecution if the child has otherwise offered a plausible and reasonable account of the event. If such liberality is constitutionally permitted when the liberty interests of an accused in a criminal case are at stake, *see id.,* at 249–54, 426 N.W.2d at 93–96, it certainly must be statutorily permitted in a CHIPS case.

The juvenile court's approach in assessing L.A.T.'s reliability and credibility under sec. 48.255(1)(e), Stats., however, seems to have held L.A.T. to a higher and stricter standard suggestive of that applicable at trial or fact-finding. Although the statutory phrase "reliable and credible" may well be ambiguous and although there is no legislative history on this point, we are not persuaded that this language requires a rejection of *Fawcett's* com-

monsense approach to the evaluation of a child's allegations and statements.

Drawing those fair and reasonable inferences from the petition's allegations and allowing for the contradictions and inconsistencies of L.A.T.'s renditions, we conclude that the requirements of the statute were satisfied by the second amended petition.[6] We reverse the order dismissing the petition and remand for further proceedings thereon.

*By the Court.*—Order reversed and cause remanded.

---

[6]We also reject D.T.'s argument that an earlier proceeding in Ozaukee county involving similar allegations which resulted in a consent decree required dismissal of the second amended petition. As the county contended in the juvenile court and as our analysis of the petition reveals, the fair inference to be drawn is that the time frame alleged is between the end of June 1989 and the September 29, 1989 visit by L.A.T. with D.T. The Ozaukee county proceeding predated this time frame. The future proceedings in this case are governed accordingly. The court shall properly caution and limit the jury's (or its own) consideration of these allegations to such time period in order to avoid any *res judicata* or collateral estoppel problems. *State v. Fawcett*, 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988), spoke to this same concern, albeit in a double jeopardy context. *See id.* at 255, 426 N.W.2d at 96.